The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good morning. I apologize for the short delay. We had some recent changes in our hardware and that had to be kind of reconciled this morning before we could get going. The court is calling case number 4231418 Torres et al. versus Peoria Park District et al. I'd ask counsel starting with counsel for the appellant to please state your name for the record. Scott Gibson, Gibson Stigloff for the appellant. Adam Chaddock Quinn Johnston for the Appalachia Peoria Park District. All In this particular case, the trial court erred in applying its gatekeeper responsibility in not correctly applying not only, number one, the law of summary judgment to determine that there are any facts to support plaintiff's complaint, which as the court will know, your honors will know, is rarely granted in a very drastic remedy prohibiting the plaintiff from the constitutional right of having a jury decide a case. Number two, the trial court improperly applied the law of the government of tort immunity. Tort immunity requires the court to look at the facts and law and strictly construe it against the defendant. And number three, in this particular case, an unusual, the trial court had the appellate court opinion number one, which is the law of the case and it refused to follow that law. The law is clear as far as the definition of willful and wanton misconduct, which is the issue in this case. The Supreme Court in 2017 in the Bar Court case, which I know you're very familiar with, stated the definition clearly. Willful and wanton conduct requires a conscious choice of action with knowledge of facts which would disclose the danger to any person. We follow up in the Tort Immunity Act in section 1-210, which is a similar definition, a course of action which shows utter indifference or conscious disregard for the safety of others. In the appellate court opinion number one in this case, which was the decision 3-0 unanimously reversing trial court's dismissal of the motion to dismiss filed at the pleading stage, the appellate court ruled that the pleadings correctly set forth facts that the defendant Park District could be guilty of willful and wanton disregard for the safety of my clients Jamie Gibson and Michael Torres. Your Honors, if you'll indulge me, it's not very long, but I think it's very important to read exactly what the law of this case is. The appellate court in appeal number one wrote, the Park District having a safety policy in place prohibiting such use of the poles, the Park District, through its agent or employee, allegedly specifically told plaintiffs the poles were quote, were there for any camping or recreational purpose they so desired, end quote, without any qualification or indication that doing so would be against the Park District's policy. Similar to the Benhart case, the allegation in plaintiff's... Counsel, a couple of things here. First of all, you've talked about a ordinance and sometimes you use those interchangeably, but there are two different things in this case, right? That there's the ordinance that covers all of the Park District's facilities and then there's some evidence that they had a policy or practice of disallowing hammocks, is that right? Not exactly, Your decades and the ordinance is the basis of the policy. The police officer, Officer Cogdill... Can we stop there then? The ordinance doesn't say anything about hammocks, right? Correct. All it says is buildings or structures. Correct. So this is a campground. This particular facility is a campground. Would that prohibit somebody from having a tent, which seems to be more of a structure than a hammock? Yes. So you can't have a tent at the campground? No, you can't. Okay. How about a folding chair? I don't know the answer to that. I assume you probably could. I don't know. So what makes a hammock a structure or building? Based upon the way that the sworn testimony, which is uncontradicted, defense counsel... We're interpreting a law right now, so I don't know the testimony is going to help you there. What makes, as a question of interpreting an ordinance, where we have all the same canons of construction, why would we interpret building or structure to mean a hammock? Because that's the way the Park District implemented the policy and that's how they interpret it. And that's clear and not contradiction. Defense counsel and trial court, both in oral argument, written brief, and in this court, is not disputing the safety policy in existence. And the safety policy is they prohibited it. It was right in the police report. Police officer wrote. Right, and that's where I guess I'm not sure whether we're talking about one thing or two things. I understand that there was discussion about that's our policy is to not allow hammocks. What I'm not clear about is that that has its roots in this ordinance. Well, all I can state is what the record states is they, when asked that question, the police officer stated that's based on the ordinance. But as a matter of construction of an ordinance, we wouldn't let a layperson's interpretation control ours, would we? No, but I'm not sure with all respect, the relevance of it is that they had the policy and they don't dispute they have the safety policy and they've had it for many, many years, decades, that prohibits the hanging from anything from poles, including hammocks. Isn't there evidence that it was used for banners in the past? No, the policy is hanging anything and of any appreciable weight. Okay, now any appreciable weight? Well, that's because that's what the, my clients were told during the walkthrough six months beforehand, you can use the poles for anything you want, period. And the appellate court in appellate court one stated that was without equivocation, the words were clear, and if the facts show that that was what was said, when the Park District then did not disclose its safety policy prohibiting use of poles for hammocks or anything else, then that would be a removal of a safety policy. Have you skipped the step of showing that this policy was a safety policy? No, the appellate, the defendant admits it. They stated in their, in the trial court, in their oral argument transcript, in their brief, in the appellate court, they brag about their safety policy. They say, we had this safety policy and it was in existence, it's evidenced by our ordinance prohibiting the hammocks, and that's all we have to do. We don't have to notify anybody of it, it's in our ordinance. That's their argument, which I think is nonsensical, but that's the way they state it. Counsel, your argument is that this earlier decision by the Third District is the law of the case. That's not why we're here. We're here about whether or not discovery established that you're very strongly worded or written complaint, that there are facts that underpin it. Correct. And for example, where in the record does it say that anybody said you can use this for any camping or recreational purpose that you want? Who said that, and when, and who'd they say it to? Jamie Gibson testified that when she was in her deposition, which is after appeal number one, when she was asked multiple questions about what the camp ranger told her at the tour, that the camp ranger pointed to the poles and said, you can use the poles for whatever purpose you want. Well, wait, wait, the poles or the campground? The poles, specifically the poles. That was the subject of the conversation. The only reason it would be unsafe to use the poles would be if you had some reason to believe they were insufficient for the purpose that they were being used. Is that fair? Correct. So what knowledge did the Park District have that the poles were insufficient to bear the weight of a hammock? Because that's their safety policy. Their safety policy is not in dispute. Safety policy prohibited the hanging of hammocks on the poles. No, but that covered how many parks, that policy? How many parks does the Park District have? This is the only park that the camp, the Park District has many parks. This is the only park that has a campsite. Right, but my point is simply that if there's a policy from an ordinance, it would apply to all of the parks. It's not a policy about these poles. The safety policy is not really in dispute. I mean, the police officer wrote it in the police report. Jacob Moll, the camp manager, stated that he knew of the policy, that it was his job as the camp manager to enforce the policy to prohibit the use of the poles and the hanging of hammocks on those poles. And as we know, Police Officer Cogdell testified, this was after Appeal Number One, we didn't know this until the discovery was completed, that actually Jacob Moll had knowledge, actual knowledge they were hanging the hammock, that he gave them permission to hang the hammock on those poles. And as Officer Cogdell confirmed, that's a violation of their safety policy. Because obviously, why would you have a safety policy prohibiting someone from hanging something? Why would you have a policy prohibiting someone from hanging something, other than because of safety? I mean, that's the whole point of these poles. There's no decorative purpose to these poles. They're not totem poles. They're just poles, you know. Right, but the policy isn't a pole policy. It's not about these poles. It's broader than that. And we can talk about whether it includes hammocks, but it's a policy for building or structures? Correct, and it includes these poles and includes the hanging of the hammock, as confirmed by the Park District employees, the police officer and the manager. So, you can't see where we might have to look at that as being a statement of the policy, separate and apart from the ordinance, which applies to every park in the Park District? I suppose technically, it would be a difference, but a difference for what matter. What difference does it make? I mean, that's their policy. Their policies are policy, but the source of it isn't that. I don't understand the importance. Doesn't willful and wanton conduct usually require more than inaction? Yes, because in this case, we have actual action. The camp manager gave them permission, had knowledge of what they were doing, had knowledge of the policy prohibiting it, had knowledge that it was unsafe to do so, didn't tell them of the policy and let them do it, gave them permission to do it. What could be more willful and wanton than that? I think you've alleged that they've had knowledge of an impending danger. Is that borne out by the evidence? There's no evidence they knew the poles were weak or insufficient, right? The particular poles. They knew that the poles were dangerous for weight. That's why they prohibited the use of a hammock. No, but you keep taking a general policy against hammock and making it about these poles. And I think that's probably beyond what the record supports. I would respectfully disagree. I mean, it's obvious. So they could put a hammock somewhere else? According to the policy, you can't. Okay, so the policy isn't about the particular ability of what they're attaching the hammock to to bear that weight. So they don't really have knowledge or there's no record of the Park District having knowledge about the condition of the poles, whether they were adequate or inadequate to bear the weight. There's just a general prohibition. There's a general prohibition to be sun safe to hang things from the poles and other structures in the park. And in this particular case, we know that they did not have an adequate inspection system. In fact, the camp manager had no knowledge of how to inspect poles or anything. Doesn't that make this a negligence case and not a willful and wanton case? No, because in this particular case, they had the actual knowledge of the unsafe condition and they gave with real knowledge. This isn't hypothetical. What was the unsafe condition they had actual knowledge of? It's unsafe to hang hammocks from poles in the park. Hammocks hang, right? That's what they do. They've got to hang from something. So they're saying they don't want any hammocks in the park. Correct. So there's not an unsafe condition there. They're talking about unsafe practice. But there's no nothing in the record says they knew those particular poles couldn't bear the weight of that hammock. Well, when you have a safety policy that prohibits the use of certain items in a park campsite, and you have knowledge of that, and yet you let someone innocently, you don't inform them of the pulse. That's the crux of this matter. They didn't they had a policy, they didn't inform anybody of it. And it was only after the plaintiffs were severely injured. Was there some unequal knowledge here about the dangers presented by using a hammock? Of course there is. I mean, what is that? They were, the plaintiffs were given permission to use the poles for whatever they want. They come in, they're not told they can't bring a hammock. They can't tell that they can't do this. And they come in, it's natural, the poles are the exact there, it's in the campsite, they can use it for whatever they wanted. It's in the exact location, which was where you put a hammock. It's in the exact distance that a hammock is you can stretch across. The testimony is that the brush and fields around the campsite were filled with poison ivy. So there would be no other place to hang their hammock. And so they hang the hammock there, they sit in it for a few seconds, it snaps and breaks and severely injures them. Does the record show, does the record show that those poles were inspected by an employee of the campground and inspected by the people who were getting ready to use, getting ready to hang the hammock? The evidence of the inspection by the campground is, they called an inspection. They had a checklist. He said he looked at it. That's all he did. And he didn't even know there was nothing about the poles on the checklist. And he didn't touch them. He didn't know what to do about a pole. He wouldn't have known if there was a rotten pole or not. He didn't do any testing to figure it out. The plaintiff said that they pushed upon it, it seemed to them that it was solid enough and they put the hammock up. But how would they know? They wouldn't know because they're not experts in examining poles. And it's not their responsibility to find out if this pole has been there for 50 years, that it's actually a rotten pole, that there's a policy of prohibiting this unsafe practice because the park district knows it's not safe to hang things from the poles, including a hammock with people in it. So if there aren't any more questions, I'll just continue on. I pretty much have made my argument here. In terms of the trial court, the trial court, as you know, I'm not sure on my time, there's no timer on here, is there? But in any event, the trial court in its ruling, I think, as I said at the beginning, made some serious errors in its interpretation. It stated at the beginning of its ruling that their park district had no knowledge of a dangerous condition and that knowledge is important. Well, they obviously had knowledge because they had the safety policy prohibiting the use of hammocks in the park and in the poles in this case. Isn't the fair interpretation of that, that their knowledge would be the knowledge that those particular poles couldn't bear the weight of the hammocks, rather than some general principle that hammocks are per se dangerous? Well, I think it's, I mean, it's a difference without a meaning. I mean, it's a huge difference because your position seems to be that their policy says hammocks are per se dangerous and shouldn't be used. That's their safety policy. They prohibit the use of hanging hammocks in the park. That's exactly what their policy is. For what other reason would you have such a policy at a campsite? It's natural to bring a camping hammock to a campsite. I mean, that's what people do. You bring stoves and backpacks or whatever you bring to camp. I'm not a camper. But why would you have such a policy? Why would you have a policy if it wasn't unsafe? I mean, you just sort of contradicted yourself. You said it's common, people do it, but if they prohibit it, it has to be because it's unsafe. They, the defendant in its brief and argument has said it's a safety policy. That's why they prohibit the hanging of hammocks in the park. That's not a dispute from the defense. And I know, I guess I only have about one minute left, but you, you've read my brief. The appellate court in the third district made its ruling and the trial court stated that it doesn't have any responsibility to follow the third district's statement of the law. Does a safety policy that the district doesn't bring to the attention of a user automatically mean that that's a willful and wanton act? No, but in this case, when they have actual knowledge in violation of the safety policy before their eyes and they allow it to happen and don't enforce the safety policy or even inform the people that what's the what's your best case for that proposition? The, well, that's what officer Cogdell said that officer legally, what's your best case for that proposition? Uh, probably, well, the, the most recent cases, the Wilson case that I cited in my brief that, and again, this is, this is summary judgment. It's, it's not a judgment matter. Uh, so thank you counsel. You'll have time for rebuttal. All right, Mr. Chaddock. Thank you, sir. Uh, I start with, uh, I want to start with the plaintiff's first argument, which is to suggest to the court that the third district appellate court decision back in 2028 is binding in some way. Obviously I respectfully disagree with that position. Uh, that, that, uh, appellate court decision is in no way a law of the case for this issue. The appellate court of the third district, uh, considered only the pleadings and only made a determination as to whether plaintiff's pleadings were sufficient to survive the motion to dismiss. Um, there is simply no, uh, finding of law that there was in fact a safety policy or that it was in some way controlling of the remainder of the case. So I wanted to start there that I don't think that third district decision is controlling. In what ways is the evidence as shown by the discovery different from the allegations of the pleadings that the third district found sufficient? Right. So in the plaintiff's, uh, allegations in their second amended complaints, uh, the plaintiff specifically alleged that the, there was evidence that the park district knew that these bulls were a dangerous condition. And in fact, there has been no indication from any source that anyone at the park district, uh, whether, whether generally or specifically at Wakanda had any indication or any knowledge that the old in question could present a dangerous condition. Specifically, uh, all the park district employees that have been deposed in this case, uh, indicated that there was no knowledge of prior accidents with these bulls. There was no knowledge that these bulls had collapsed or fallen before. There was no knowledge of any injuries with these holes before. So the, the allegations of the second amended complaint have been proven to be untrue as we've gone through the evidence. Um, the, the, uh, many complaint also alleged that district employees had pulled the plaintiffs at the polls could be used for any camping or recreational purpose. They so desired again, that's patently false. Uh, the plaintiff, Jamie Gibson Torres specifically told us in her deposition, um, and that's page four 58 of the common law record that, uh, during her tour in February, approximately six months before this accident, the person giving her a tour of the facility for the purposes of a wedding reception, uh, referenced the polls and said, you could use them for banners and decorations. Uh, Jamie Gibson Torres specifically indicated, uh, when I asked her in deposition, did this discussion include hammocks? And she said, no, it was decorations. Does Gibson say that they could be used for any purpose? Gibson, Gibson did not indicate that it was any purpose whatsoever. She specifically considered the context. She said we could use it for whatever we wanted. And then the next several questions are the context of whatever she wanted. Uh, she specifically Gibson Torres specifically admitted in the next several questions that it was banners and decorations that were the subject of the conversation saying that she could use it for whatever they wanted. Did it mean they could go start a bonfire around the pole or they could use it for a public execution? They simply were discussing wedding decorations. And, uh, Gibson Torres admitted in that portion of her deposition testimony that it was focused on wedding decorations, not any other purposes outside of the wedding decorations. Um, Mr. Gibson has argued to the court today that the defendants don't disagree that it was a safety policy. Nothing could be further from the truth. In fact, on page 27 of my brief, there's a whole heading saying plaintiff mischaracterizes this ordinance as a safety policy. We do not at all agree that it is a safety policy. Um, this is an ordinance, um, that grew. Officer Congress said served as his basis as understanding that that's why Hamlet hammocks weren't allowed to be erected. But it's a safety policy that is so much more broad than just the pools on this particular campsite or just hammocks on this particular campsite. It is, in fact, a park district wide policy. Um, plaintiff's attorney's entire argument seems to be based on the fallacy that this one policy was erected because of the polls in this case. There simply is no evidence to support that argument. There is no evidence of any legislative history, uh, that was created when this ordinance was created. No park district employee has testified that this ordinance was created because of the polls in this case. Um, simply assuming that that the, uh, ordinance in this case was because of the polls in this case is falling. If you look at the plain language and actually use the statutory construction, there is nothing in the plain language of the ordinance that suggests it's a safety policy. Nothing in the ordinance suggests that it is, uh, been enacted to protect campers, to protect patriots. The plain language. Do you concede that it would prohibit the use of hammocks? I think it certainly can be interpreted to say, uh, hammocks are if they're erected on any, uh, park district structure. Absolutely. I think it can be read that way. However, I don't think that's controlling of any of the legal issues in this case. Um, whether or not, uh, this ordinance allows for the erection of hammocks, it only becomes an issue of local laws and conduct. If and only if, uh, mole jacob mold the manager who allegedly told them through cargo's testimony that they could use the hammock, it only becomes a welcome unwanted issue. If more has some reason to believe that they could be injured by using the hammock, and there simply is no evidence that more had any reason to believe that they could be used injured by using the hammock. The evidence in the case is absolutely clear that no one had any knowledge of any particular condition of any of these polls. Mall did a visual inspection four days before the plaintiffs arrived. He did inspections in the spring and the fall. He visually inspected the campsite, visually inspected the polls, and there was nothing that needed to be repaired. The plaintiffs then show up to use the campsite. Jamie Gibson Torres and Jordan Knudson testified that they were very careful about how they erected this hammock, that they did a visual inspection of the polls, couldn't see anything wrong. They pushed on the polls. The polls didn't move, didn't crack, didn't pop, gave them no reason to be concerned of the scurriness. And then they put ropes around the polls and use their weight to pull back on the polls. After all of those, uh, all of those efforts by the plaintiffs, they determined that in fact, the pole was sturdy. So in this case, there is no reason, no basis for Jacob Mall to ever assume that if a hammock was used on those polls, that there would somehow be a reasonable possibility of injury, um, at least from the polls collapse, right? Because there is no evidence, uh, anywhere in the record that, uh, the park district had any knowledge of the polls collapsing. Um, you know, I think this case is very much, uh, like the Tangliere case that you cited to the court in our appellate brief. In the Tangliere case, there was a seesaw, um, that was missing some of the hardware underneath the seesaw unbeknownst to the, uh, park district employees who did the regular inspections. Park district had a policy in place, did regular inspections and did not find that latent defect. Um, and simply because the latent defect was not identified, was not a reason to, uh, find willful and wanted conduct on behalf of the park district. I think the same, the same thing happens here. The defect in the whole was, was a latent defect. No amount of visual inspection, no amount of pushing, no amount of pulling on this post was ever going to identify that this post was a miss or that this post might cause injury. And for that reason, I do think that the Tangliere case is controlling. Does the presence of your policy against the use of hammocks change that in any way? I don't think it does because, um, even, even let's say that Jacob mole violated the ordinance, not policy. Uh, if, if Jacob mole violated the ordinance and said, okay, you can hang a hammock. That doesn't change the fact that he had no reasonable basis to believe that allowing the plaintiffs to hang the hammock would result in their injury because he has no knowledge about the latent interior. So I don't think, I think the ordinance doesn't play much of a role. And I frankly think it's kind of a red herring for that reason, right? Because whether the ordinance was violated or not, it's not what one wants in conduct unless, you know, that there is some inherent risk, right? Unless you know that there's a reasonable basis that, uh, a reasonable basis that the plaintiff could be hurt. And I think that's the plaintiff argued the fact that you, your ordinance, as you both seem to interpret prohibits hammocks is a reflection that there must be some danger with regard to the use of the hammocks and that therefore you're, you're aware of that danger. The ordinance doesn't in any way contemplate danger of hammocks or danger of, uh, or than any way. Well, I think one could interpret it to, uh, ban hammocks. I think it's much more likely that the policy is meant to do exactly what it says in its plain language, which is to prohibit the erection of, uh, structures on public property. Uh, so as to avoid, um, uh, avoid squatters to avoid, uh, people, uh, blocking right-of-ways, et cetera. Um, so no, I don't think you can, you can read the ordinance to say, well, you prohibit the erection of any structure or in building park district. Why that must mean you knew that hammocks were unsafe on these particular poles. I think that's absolutely without basis in either law or fact. The question was earlier asked about tents. Does this campground allow tents? It does. Well, isn't that a structure or arguably a structure? Again, we don't know because there was no definition in the ordinance and there's no legislative history. Uh, in as much as this is a campground, I would suggest that it doesn't, uh, prohibit tense because then we've lost the whole purpose of the campground. Um, so I think tense would be allowed under this, um, under this ordinance. I think hammocks could be read to be allowed or they could be read depending on your intent and your interpretation to bar hammocks. Again, though, I don't think that that's the key issue. Um, whether or not the ordinance was, um, uh, in force on this particular case doesn't determine whether or not the park district acted willfully and wantonly. Um, in addition, um, we also argued outside of the idea that we are entitled to summary judgment on three dash one Oh six. We also argued that we were entitled to summary judgment under three dash one Oh two. That's not an argument to Trump or got to because it granted our first, uh, argument under three dash one Oh six. But we do think that under three dash one Oh two we are entitled, um, to, um, summary judgment. One. We think that this, uh, particular set of plants were not intended and permitted users. If you're going to interpret the ordinance saying hammocks can't be used, then they weren't intended and permitted users. But two, and more importantly, I think is that under three dash one Oh two, it specifically indicates that, um, we are only liable for those conditions that we have asked for constructive knowledge of. And again, as I argued, as it relates to open walking conduct, there is absolutely no indication in this case that we had any actual or constructive knowledge that this particular, um, this particular hole or these sets of holes at this campground were dangerous. And then just kind of, as I wrap up, I want to reference the court back to the barbers is playing in case on the issue of willful unwanted conduct. I think it's hugely important. I think it's very, uh, analogous factually. In that case, the plaintiff, uh, child was injured while they were playing field hockey in PE class. Um, and the, uh, child in that class was using a plastic stick and a squishy ball instead of a hard wood stick and a puck. Um, and so the teacher who was in charge of that gym class had indicated that she had no evidence of prior injuries, no evidence of kids being previously hit in the eye with a ball. And she thought using the plastic stick instead of the wood stick and the squishy ball, instead of the hard puck were, were enough to avoid injuries such that none of the children needed to wear goggles to protect their eyes. Um, and the court noted in that case that the PE teacher had instituted several safeguards to prevent the injuries, um, by using the plastic sticks and the squishy ball instead of wood sticks and pucks. And so that did show a conscious regard for the safety of the Children. And more importantly than that, the court said, even in the absence of prior incidences, the plaintiff could still prove if there was some evidence that there is a risk of serious injury generally associated with the activity. And the court went on to give an example of such as using shot saws in an industrial shop blast. That might be a case where you didn't need to know of prior injuries, um, because of the inherent risk in the use of saws. The court then went on to say, using the floor hockey sticks that were plastic in the squishy ball clearly didn't rise to that level. And the plaintiff failed to offer any evidence of a particular danger associated with floor hockey using the plastic sticks and the squishy balls. I think that's exactly on point here. The planet has offered no evidence of any particular danger that would be associated with hammock use, um, in and of itself. And again, there was no evidence of prior injuries. So for that reason, we do think we are entitled to serving a judgment under the Tort Immunity Act. If the court has no further questions for me, I have nothing further. All right. Thank you, Counsel. Mr Gibson and rebuttal. Thank you, Your Honor. Um, in terms of permitted users, what could be more of a permitted user than you're given permission by the camp managers to hang the hammock? That's a permitted user. I mean, they weren't violate. They had no knowledge of violation of any policy because there was no policy communicated to them in any way. But I think that that's an improper argument. Um, policy comes from law. Isn't law imputed to them knowledge of the law? Well, as as the court is so clearly stated, the ordinance doesn't have any words about hammocks in there. So the interpretation is by the campsite. The campground state that that ordinance is the basis for prohibiting hammocks be hung in the park, and that would mean hammocks on these poles. And these air fat questions. This is a summary judgment case. These air fat questions. They have to be strictly construed against the defendant. Um, he defense counsel made a very fine closing argument, but that is not, uh, I think determinative of this case. It's a fat question whether the jury would believe that my argument that the logical, reasonable reason why you have a prohibition of hammocks. It's not written in the ordinance, but they have stated that this is how we interpret the ordinance. So that is the responsibility of defendant that makes it willful and wanton not to communicate that you dropped your dropped your audio on us there, Mr Gibson. That's that the audio is on. Uh, I got the audio on. Can you hear me? Yes. Oh, I'm sorry, Mr. Mr Gibson, who indicate that, uh, this is a factual determination. Uh, doesn't the context, uh, in which that statement that they could use these poles for whatever they want. Isn't that important for us to consider the context in which that statement was made? But in a summary judgment motion, and I disagree with defense counsel's interpretation of what was stated there, she stated we could use it wherever we want it. He was asking questions about various things about banners and so forth. But he also asked her question. Did they say you could use it for hammocks? She said not specifically. They said we could use it for whatever we wanted. So that is the context we have. It has nothing to do with banners. That's what that was the question asked and follow up by defense comes again. These air back questions that the facts are not in dispute. It's how a jury ultimately would determine the facts and it's reasonable argument that based upon these facts that that's a safety policy, that there be no real reason. Why would you prohibit a hammock camping hammock in campsite unless it was unsafe to hang? Council the exhibit eight, which is one page of the ordinance that shows us that section three of the ordinance before we get to that, it's page 81. It's hard to construe the whole ordinance as a safety policy. Um, and you want to construe one part of it as a safety policy. I'm saying that the I didn't. The plaintiffs didn't do any of this. This is the defendant's testimony. Defendant's testimony is we have a policy based upon an ordinance. We've interpreted words from an ordinance that prohibits hammocks from being hung in the park. That is a reasonable interpretation. Why else? I can't think of another reason because it damages the whatever you attach it to. I don't know, but I just I'm not sure it jumps off the page to me as a safety issue. I'm arguing a trial, but let me have a trial. I mean, that's what this is all about. We're asked to interpret an ordinance, and that's something we do as a matter of law. And but also I think in this particular case, the defendant interpretation of its own ordinance is relevant to the particular case. Otherwise, we wouldn't have. I mean, the police officer wouldn't have written that in the police report. If that if the ordinance didn't include, I know. But if you had written this is not a safety ordinance, you would be telling me right now, Judge, it doesn't matter what he thinks. The ordinance has to be read on what it says, not what he thinks it says. You're not. I wouldn't have taken the case. I mean, I have a duty to the court to be reasonable and also the court. I would never say that's all. All right. Thank you. We will, uh, issue a matter in course. Take the matter under advisement. We now stand in recess.